IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ANNARESE ASHFORD AND KERON ASHFORD, | : | CIVIL ACTION NO. |
| | : | 1:16-CV-1445-WSD-JSA |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| BANK OF AMERICA, N.A., *et al.* | : | **F I N A L   R E P O R T   A N D** |
| | : | **RECOMMENDATION ON TWO** |
| Defendants. | : | **MOTIONS TO DISMISS** |

Plaintiffs filed this suit, *pro se*, on May 3, 2016, challenging the authority of Defendants to engage in a foreclosure on their property. All Defendants move to dismiss [5][8]. As explained below, the motions should be **GRANTED** and this action should be **DISMISSED**.

## I.    BACKGROUND

The Complaint alleges that one or both Plaintiffs transferred a $140,934 security interest to Virgin Money, USA, Inc. on April 24, 2009, in exchange for an "understanding" that Virgin Money, USA "did or would give me a Loan1 [sic] in collateral exchange, for equal consideration," allowing Plaintiffs to purchase their property on Wesley Hall Lane in Decatur, GA. Compl. [1] at 5, Ex. A. Although Plaintiffs evidently purchased the property with borrowed funds, Plaintiffs allege that "[a]n accounting of the transactions . . . " shows that neither Virgin Money nor any

Defendant actually provided a loan, *id.* at 6, nor has any such entity "provided any proof with FULL DISCLOSURE" showing a valid interest in the property. *Id.* at 6-7.

At some point, servicing of the account was transferred to Defendant Wilmington Savings Fund Society, and Plaintiffs also continually reference Bank of America, N.A. as having involvement with the loan. *See id.* at 7-8. The Complaint alleges that neither of these Defendants "put forth any consideration in the alleged contract," and have "never produced the original (Wet Signature) documents including the Security Deed and the Promissory Note and allonge . . . ." *Id.* Defendant Aldridge Pite, LLC allegedly sent debt collection correspondence and/or foreclosure notification on behalf of Defendant Wilmington. *Id.* at 8-9.

On March 20, 2014, Plaintiffs sent a sixteen-page letter styled as a "qualified written request," to Defendant Bank of America, demanding a "complete exam, audit, review and accounting of this mortgage account," copies of over 40 categories of documents beginning with "any certificated or uncertificated security, front and back, used for the funding of [the loan,]" and answers to nearly 150 individual questions beginning with "[p]lease identify for me each account accounting and servicing system used by you and any sub-servicers or previous servicers from the inception of

2

this account to the present date so that this experts can decipher the data provided."

*Id.* at 9-10, 55-70. Defendant Bank of America "partially responded." *Id.*[1]

## II.    DISCUSSION

### A.    *Standard on a Motion to Dismiss*

When evaluating a motion to dismiss under Rule 12(b)(6), the Court cannot consider matters outside of the pleadings, and must accept the allegations of the non-movant's pleadings as true but "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 552 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Moreover, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

*Iqbal* went on to instruct that, while a court must accept all factual allegations in a complaint as true, it need not accept as true legal conclusions recited in a complaint. Repeating that "only a complaint that states a plausible claim for relief

_____

[1] The Complaint suggests that the response was attached, but the Court can find no response to the March 2014 letter attached to the Complaint. The Complaint attaches Bank of America's response to another, subsequent, letter, apparently sent in November 2014. *See* Compl. [1], Ex. D.

survives a motion to dismiss" the Supreme Court advised that "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)) (other citation and modification omitted).

> B.    *The Theories Underlying the Complaint*

Most of Plaintiffs' claims are conclusorily stated and do not specifically identify a particular factual basis. However, it appears that the various claims are largely premised on several factual and legal theories as stated throughout the Complaint. These theories are meritless and cannot sustain any claim for relief, as explained below.

For example, the Complaint includes an extended discussion of the legal requirements to confer "standing" to foreclose on an assignee of a Security Deed and ultimately alleges that Defendants lacked standing for a variety of interrelated reasons including (i) the assignments conferring possession of the Security Deed were invalid because they "did not have Power of Attorney from MERS;" (ii) these creditors "never became entitled to enforce the obligation;" (iii) these creditors are not the

4

"holder" of the note; and (iv) these creditors are not the "real party in interest," apparently for all the same reasons. *See* Compl. [1] at 19-27. These arguments have all been rejected by the Georgia courts.

First, it is Plaintiffs, not Defendants, who lack standing here. Specifically, both the Georgia Court of Appeals and the Eleventh Circuit have specifically held that borrowers lack standing to challenge the validity of a lender's assignment to which the borrowers were not a party. *See Montgomery v. Bank of Am.*, 740 S.E.2d 434, 438 (Ga. 2013); *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1251 (11th Cir. 2015) ("In this case, the Haynes are not parties to the assignment they are challenging—it is between MERS and BANA. Georgia courts have previously addressed similar claims and found that the homeowners lacked standing to challenge the assignment."). Indeed, *Haynes* made clear that borrowers lack standing even in cases of alleged fraud in the formation of the assignment documents. *Id.* at 1253 ("In sum, Georgia law is clear that borrowers do not have standing to attack a forged assignment of their security deed, which—if attacked by a party with standing—would provide the basis for a claim of wrongful foreclosure.").

Second, a creditor need not possess the promissory note to foreclose. Rather, it is the possession of the security deed itself–with the power of sale conferred thereby–that authorizes foreclosure. *You v. JP Morgan Chase Bank, N.A.*, 293 Ga. 67,

74 (2013) ("Under current Georgia law, the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed."); *Gordon v. S. Cent. Farm Credit, ACA*, 446 S.E.2d 514, 515 (Ga. Ct. App. 1994) ("It is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies.") (alteration and quotation omitted).

Because an assignee of the Security Deed can exercise the power of sale, it is also meritless to argue that Defendants never "put forth any consideration in the alleged contract." Compl. [1] at 7. The Security Deed is enforceable because of the consideration Plaintiffs received at the time of the inception of the contract, that is, the furnishment of a mortgage loan to allow for them to purchase a residence. Whether Bank of America and/or Wilmington, or any other assignee, itself contributed funds to this loan is irrelevant, since an assignee enjoys the contractual rights of the original lender. *See, e.g., Sparra v. Deutsche Bank Nat. Trust Co.*, 785 S.E.2d 78, 84 (Ga. Ct. App. 2016) ("As assignor of the security deed from the original lender, the defendants have a right in the security deed and attached property, and the standing to institute a non-judicial foreclosure sale.").

The Court notes that Plaintiffs appear to also allege that even the original lender, Virgin Money USA, did not actually provide any funds either. Compl. [1] at 6. The Complaint does not explain this allegation, and specifically fails to explain how Plaintiffs somehow purchased their residence in 2009 without actually receiving a loan. Perhaps Plaintiffs are suggesting a variant of the common "vapor money" theories populating the internet, by which transactions evidenced by bookkeeping entries and/or debts sold in securitization offerings somehow do not count as enforceable obligations, therefore resulting in windfalls to delinquent borrowers. Such theories have long been rejected as frivolous. *See Thomas v. Countrywide Home Loans*, 2:09–CV–00082–RWS, 2010 WL 1328644, at *2 (Mar. 29, 2010); *McLehan v. Mortg. Elec. Registration Sys.*, No. 08–12565, 2009 WL 1542929, at *2 (E.D. Mich. June 2, 2009) ("The vapor money theory, however, and 'similar arguments have been rejected by federal courts across the country.'") (citations omitted); *Demmler v. Bank One NA*, No. 2:05–CV–322, 2006 WL 640499, at *3 (S.D. Ohio Mar. 9, 2006); *Rene v. Citibank*, 32 F. Supp. 2d 539, 544-45 (E.D. N.Y. 1999) (rejecting claims that because lender did not have sufficient funds in its vault to make the loan, and merely "transferred some book entries," lender had created illegal tender); *United States v. Schiefen*, 926 F. Supp. 877, 880-81 (D.S.D. 1995) (rejecting arguments that there was insufficient consideration to secure promissory note, and

that lender had "created money" by means of bookkeeping entry); *Thiel v. First Fed. Sav. & Loan Ass'n of Marion*, 646 F. Supp. 592 (N.D. Ind.1986) (rejecting claims that lender had violated RICO and National Bank Act by issuing loan check in exchange for promissory note, and imposing sanctions on plaintiffs for bringing frivolous action).

Perhaps Plaintiffs are alleging that some entity other than Virgin Money funded their loan. It is of course nonsensical that a secret benefactor would provide such a large loan without receiving any obligations in return. But the sources and contributors of the funds are ultimately irrelevant. The bottom line is that Plaintiffs received consideration (funds to purchase a house) from somebody in exchange for granting a security interest to Virgin Money USA. Nothing Plaintiffs have alleged impugns the enforceability of their pledge of the security interest. Nearly all of Plaintiffs' claims are premised on these bogus theories. Nevertheless, the Court will proceed to at least briefly discuss each of these claims.

C.   *Plaintiffs' Individual Claims*

1.  RESPA (Count I)

Count I alleges Plaintiffs sent a "RESPA letter" to Defendant Bank of America on March 20, 2014, and that Bank of America "deliberately failed to respond in a proper way . . . ." Compl. [1] at 9-11, 55-70.

Congress enacted RESPA in an effort to provide consumers with more information on the nature and costs of real estate transactions, and to prevent consumers from falling prey to abuses and unnecessarily high costs. *See McCarley v. KPMG Intern.*, 293 F. App'x 719, 722 (11th Cir. 2008). RESPA provides that those making or servicing a mortgage loan must make certain disclosures relating to the servicing of the loan. *See* 12 U.S.C. §§ 2605(a), (b).

Among other things, RESPA requires that a loan servicer respond to a Qualified Written Request ("QWR") from a borrower that meets certain requirements and that seeks "information relating to the servicing of such loan." 12 U.S.C. § 2605(e); *see also* 24 C.F.R. § 3500.21(e). RESPA does not, however, "require a servicer to respond to any question that a borrower may ask–no matter how broad, vague, or far afield." *De Vary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1106 (D. Minn. 2010). Rather, servicers are required only to respond to inquiries relating to *servicing* of the loan. Congress specifically defined "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). RESPA does not require servicers to answer inquiries on other topics. *See Liggion v. Branch Banking & Trust*,

9

Civil Action No. 1:11-cv-1133-WSD, 2011 WL 3759832, at *3 (N.D. Ga. Aug. 24, 2011) ("Plaintiff's information document requests are not a proper qualified written request under RESPA because they do not relate to the servicing of the loan."); *see also Lawther v. Onewest Bank*, No. C10-0054RS, 2010 WL 4936797, at *6 (N.D. Cal. Nov. 30, 2010) ("A loan servicer only has a duty to respond if the information request is related to loan servicing.") (citations omitted); *Jones v. PNC Bank, N.A.*, No. 10-cv-01077LHK, 2010 WL 3325615, at *2 (N.D. Cal. Aug. 20, 2010) ("A QWR must seek information relating to the servicing of the loan; a request for loan origination documents is not a QWR."). As one court explained, it is not sufficient for a plaintiff to allege that a letter sent to a servicer merely requested information about the loan in general; the letter must request information specifically about the servicing of the loan in order to qualify as a QWR:

> The counterclaim alleges that on April 14, 1998, the Naeems, through counsel, sent a qualified written request to MorEquity for information relating to their loan, and that MorEquity failed to respond within 60 days as required by § 2605(e). None of the irregularities alleged in the counterclaim, however, relate in any way to the "servicing" of the loan, as that term is defined in the statute. The counterclaim alleges a forged deed, and irregularities with respect to the recording of the two loans, but makes no claim with respect to improper servicing. There are no claims, for example, that MorEquity did not give the Naeems credit for any periodic payments made, which is how the statute defines servicing. According to the allegations of the counterclaim, the letter sought information about the validity of the loan and mortgage documents, but made no inquiry as to the status of the Naeem account balance.

> Therefore, the request did not relate to "servicing" of the loan, and Count V fails to state a claim under § 2605.

*MorEquity v. Naeem*, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000). A valid QWR must, among other things, "provide[] sufficient detail to the servicer" regarding the relevant information sought. *See* 12 U.S.C. § 2605(e)(B)(ii).

Thus, in order to state a claim for a violation of this section of RESPA, 12 U.S.C. § 2605(e), a plaintiff must allege facts to support that: (1) the defendant is a loan servicer; (2) the plaintiff sent the defendant a valid QWR; (3) the defendant failed to adequately respond within the statutory period of 20 days or 60 days; and (4) the plaintiff is entitled to actual or statutory damages. *See* 12 U.S.C. § 2605; *see also Frazile v. EMC Mortg. Corp.*, 382 F. App'x 833, 836 (11th Cir. 2010) (an allegation of damages is a necessary element of any claim under § 2605). A loan servicer who fails to respond to a qualified written request is liable for the failure, but a borrower is limited to actual damages unless the failure to respond was part of a "pattern or practice of noncompliance" with RESPA's requirements. 12 U.S.C. § 2605(f).

Plaintiffs' March 20th letter posed 40 demands for documents and nearly 150 individual questions relating to the loan in general, and specifically aimed at verifying the validity or existence of or details regarding the loan itself. Plaintiffs fail to show

how this correspondence qualifies as a valid QWR. Even if a few of these hundreds of demands could in isolation be posed in a proper QWR, the overwhelming majority are nonsensical or at least clearly outside the scope of a servicer's QWR obligation. A servicer is not bound to construe such a fantastically overbroad, scattershot series of demands and assertions as a QWR. *See Segle v. PNC Mortg.*, 2011 WL 1098936, at *6 (W.D. Wash. Mar. 25, 2011) ("Plaintiff's May 3, 2010, letter fails to meets the QWR's requirement that it 'provide sufficient detail to the servicer regarding other information sought by the borrower.' Plaintiff's May 3, letter requests hundreds of pages of documents, including 'certified or uncertified securities,' 'pool agreements,' 'deposit agreements,' 'servicing agreements,' 'custodial agreements,' 'master purchasing agreements,' 'issuer agreements,' 'commitment to guarantees,' 'trust agreements,' a 'certified copy of the note,' and several other documents. Plaintiff makes no showing that this type of broad request for any and all documents was the type of request covered under RESPA.") (citations omitted).

Moreover, a borrower is limited to actual damages unless the failure to respond was part of a "pattern or practice of noncompliance" with RESPA's requirements. *See* 12 U.S.C. § 2605(f). Plaintiffs allege no facts to suggest that Bank of America has engaged in a "pattern or practice of noncompliance" such as to justify an award of statutory damages. And Plaintiffs allege no facts that plausibly suggest that they

suffered any actual damages from any failure by Defendant Bank of America to "respond in a proper way" to the letter. Dismissal is appropriate on this ground alone. *See Frazile*, 382 F. App'x at 836 (an allegation of damages is a necessary element of any claim under § 2605); *see also Yates v. GMAC Mortg. LLC*, Civil Action No. 1:10-cv-2546-RWS, 2010 WL 5316550, at *4 (N.D. Ga. Dec. 17, 2010) (dismissing RESPA claim with prejudice because plaintiff failed to "articulate any facts showing how Defendant's failure to respond or inadequate response to the RESPA requests resulted in any damages or the amount of such damages.")

  2.  TILA (Count 2)

Count II asserts violations of the Truth In Lending Act ("TILA"), 15 U.S.C. § 1641, by Defendants Bank of America, N.A. and Rushmore Loan Servicing. Compl. [1] at 11-12. Plaintiffs allege that "[i]n addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such a transfer . . . ." *id.*; *see also* 15 U.S.C. § 1641(g). The apparent basis of this claim, therefore, is that Defendants failed to notify Plaintiffs of one or more assignments.

The Complaint does not otherwise explain the factual basis for this claim. Indeed, the Complaint itself attaches a notification from Bank of America addressed

to Plaintiffs on November 10, 2014, notifying them that the servicing of the loan was being transferred to Defendant Rushmore Loan Management as of December 1, 2014. Compl. [1] at 48.

Apparently, the loan was subsequently transferred to Defendant Wilmington Savings Fund, and Plaintiffs allege that they never received notice of that assignment. *Id.* at 8. But § 1641(g) only imposes disclosure obligations on the new creditor or assignee. Therefore, a failure to notify Plaintiffs of a transfer to Defendant Wilmington Savings Fund would not be a basis to sue Defendants Rushmore or Bank of America, which are the only Defendants charged in Count II.

Moreover, as with their RESPA claim, Plaintiffs fail to show any plausible claim for relief. They allege no facts suggesting that they suffered actual damages from the alleged failure to notify. And while statutory damages are available under TILA in some circumstances, particularly based on the amount of finance charges associated with the transaction, *see* 15 U.S.C. § 1640(a), Plaintiffs allege no facts showing the applicability of such damages here. Dismissal is appropriate. *See Correa v. BAC Home Loans Servicing, LP*, 2012 WL 1176701, at *10 (M.D. Fla. Apr. 9, 2012) (dismissing TILA claim based on alleged failure to disclose assignment because "[e]ven under the liberal pleading standards applied to pro se pleadings, the

14

Court finds that Plaintiff still fails to plead a plausible claim for actual damages or statutory damages.").[2]

_____

[2] Actions for monetary damages under TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). Defendants assert that any TILA claim relating to the failure to disclose the assignments would be untimely under this deadline. Consideration of this defense requires the Court to accept and consider the various publicly recorded assignments attached by the Defendants to their motions to dismiss. Generally, as noted above, the Court is permitted only to consider the facts alleged in and the documents attached to the Complaint. But "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for the purposes of Rule 12(b)(6) dismissal." *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Here, the Complaint refers specifically to several of the assignments and those assignments are central to the Complaint because the alleged failure to disclose them is the entire basis of the TILA claim. Moreover, the assignments are publicly filed documents, and Plaintiffs do not specifically object to their consideration by the Court.

Upon consideration of the assignments attached by Defendants, it is clear that none of them give rise to a timely TILA claim except for the ultimate assignment to Defendant Wilmington Savings. The other assignments and any arguable failure to disclose them occurred well prior to a year before the filing of this lawsuit on May 3, 2016. This defense in and of itself would not permit dismissal of the TILA claim altogether, however, because any failure to notify as to the ultimate assignment to Defendant Wilmington would appear to be timely. This assignment was signed on April 13, 2015 and filed on April 30, 2015. *See* MTD, Ex. F [8-2] at 26. Because the assignee is given thirty days to notify the borrower of an assignment, *see* 15 U.S.C. § 1641(g)(1), no violation can be said to accrue with regard to this assignment until, at the earliest, thirty days from the execution of the assignment on April 13, 2015. Because this lawsuit was filed less than one year later, on May 3, 2016, any alleged failure to disclose the Wilmington assignment would appear to be timely. However, for all of the reasons explained above, the TILA claim fails in its entirety on other grounds.

3.  Fair Debt Collections Practices Act (Count 3)

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e; *see also Frazier v. Absolute Collection Serv., Inc.*, 767 F. Supp. 2d 1354, 1363 (N.D. Ga. 2011) ("The FDCPA seeks to remedy abusive, deceptive, and unfair debt collection practices by debt collectors against consumers."). Specifically, the FDCPA "prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and the making of any false, misleading, or deceptive statements in connection with a debt, and it requires that collectors make certain disclosures." *Acosta v. Campbell*, 309 F. App'x 315, 319 (11th Cir. 2009) (citing 15 U.S.C. §§ 1692d, 1692e, 1692f); *see also LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010).

"To prevail on a FDCPA claim, a plaintiff must establish that: (1) she has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a debt collector under the Act; and (3) the defendant has engaged in a prohibited act or has failed to perform a requirement imposed by the FDCPA." *Frazier*, 767 F.Supp.2d at 1363 (quotation marks and

citations omitted). It is well-established that the FDCPA applies only to "debt collectors" and not to creditors or servicers. *See* 15 U.S.C. § 1692a(6); *see also Correa*, 2012 WL 1176701, at *11 (the "critical element is whether the defendant is a debt collector" as defined under the statute).

> The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third party is collecting or attempting to collect such debts. For the purpose of section 1692f(6) . . . , such term also includes any person who uses an instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692(a)(6).

The statute also excludes from the definition of "debt collector" altogether any person who acquires a debt before it is in default. *See* 15 U.S.C. § 1692a(6)(F). This exclusion "has been interpreted by courts to mean that mortgage servicers are not covered by the FDCPA if they began servicing the loan at a time when it was not in default." *Stroman v. Bank of Am. Corp.*, 852 F. Supp. 2d 1366, 1375 (N.D. Ga. 2012). A plaintiff's ability to properly classify a defendant as a debt collector is critical because the "FDCPA applies only to 'debt collectors' whose conduct involves the

collection of a debt." *Evans v. Appalachian Mountain Serv., Inc.,* No. CV611-037, 2011 WL 3739552, at *2 (S.D. Ga. Aug. 24, 2011) (citation omitted).

The Complaint conclusorily alleges that Defendants Bank of America, Rushmore, and Aldridge Pite, violated nearly every restriction set forth by the FDCPA. Compl. [1] at 12-14. While the text of Count III impermissibly just parrots the wording of various statutory subsections, the background allegations in the Complaint appear to reveal the particular theory upon which Plaintiffs rely.

Specifically, 15 U.S.C. § 1692g provides that a recipient of a debt collection notice be informed of his or her rights to dispute the debt, and that no collection effort shall be undertaken during a properly initiated dispute until the debt collector has verified certain facts regarding the debt. Plaintiffs appear to allege that Defendants Bank of America and/or Rushmore and/or Aldridge never "provided all documented information in regards to a Verification of Debt and Proof of Claim that would prove that they are a real party in interest to even pursue this matter in a court with valid standing," and proceeded with alleged debt collection efforts and communications despite not validating the debt as demanded. *See* Compl. [1] at 7-9. Specifically, Plaintiffs attached a letter dated March 20, 2014, in which they demand that Defendant Bank of America "validate this debt" by supplying them with over 40 categories of documents and answering nearly 150 questions, to allow them to

"conduct a complete exam, audit, review and accounting of this mortgage account." Compl. [1] at 55. Defendants presumably did not provide all of the information requested and yet continued to engage in collections/foreclosure activity.[3]

This claim must be dismissed for several reasons. Most basically, the Complaint includes no factual allegations to suggest that any of the Defendants named in this Count were acting as a debt collector in seeking to foreclose on Plaintiffs' property. The Complaint just conclusorily alleges that Defendants qualified as debt collectors, but supplies no facts to support that conclusion. In fact, a mortgage servicer is generally considered to be a *creditor*, not a debt collector subject to the statute. *See Montgomery v. PNC Bank*, No. 1:12-CV-0265-AT, 2014 WL 11531624, at *3 (N.D. Ga. Aug. 22, 2014) (explaining that "the entity which holds the indebtedness is a creditor under the FDCPA, unless that entity was assigned the debt 'solely for the purpose of facilitating collection of such debt for another'") (citing

---

[3] Because the Complaint is so imprecise, it is not clear whether the Plaintiffs are relying on the March 20, 2014 letter as their demand to validate the debt or some other correspondence, or some combination. Notably, the Complaint attaches a letter from Bank of America dated December 4, 2014, which responds to another missive from Plaintiffs, apparently dated November 15, 2014, that is not itself included in the attachments. *See* Compl. [1] at 52. This imprecision as to the exact basis of the claim and the exact conduct as to which Defendants are being sued is another reason for dismissal.

19

15 U.S.C. § 1692a(4)). While there can be circumstances by which a creditor foreclosing on its own security interest can be considered a debt collector, *see, e.g., Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1318 (11th Cir. 2015), the Complaint alleges no facts to support such a finding here.

While attorneys such as the Aldridge firm can more commonly qualify as "debt collectors," the Complaint still must include facts to support such status as well as explain how the attorneys violated the statute. Here, the Complaint includes nothing to support the conclusory allegation that Aldridge qualified as a debt collector. And the only specific fact alleged as to its conduct is that Aldridge "continuously" threatened to schedule a foreclosure sale. Compl. [1] at 9. Foreclosure activity in itself, however, does not generally constitute debt collection activity. *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460 (11th Cir. 2009).[4] And threatening valid action in legitimate protection of a security interest does not violate the statute. Nothing alleged by Plaintiffs suggests that Aldridge or any other Defendant acted otherwise. Thus, Count III should be dismissed.

---

[4] As a limited exception, the statute provides that attempting to enforce a security interest in cases where the creditor does not enjoy a present right to possession of the property can violate § 1692(f)(6). This does not apply, however, because Plaintiffs' legal theories as to why Defendants lack standing to foreclose and possess the property are entirely meritless.

4.  Breach of Contract and Implied Warranties (Counts IV and V)

Under Georgia law, the essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom. *See Budget Rent-A-Car of Atlanta, Inc. v. Webb*, 469 S.E.2d 712, 713 (Ga. Ct. App. 1996); *see also TDS Healthcare Sys. Corp. v. Humana Hosp. Ill., Inc.*, 880 F. Supp. 1572, 1583 (N.D. Ga. 1995). Furthermore, "[t]o constitute a valid contract, there must be parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. A plaintiff must establish that a defendant breached a specific provision in the contract in order to establish a claim for breach of contract. *Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1369 (N.D. Ga. 2006) ("Because American Casual cannot point to any contractual provision that Moe's breached by failing to act in the manner set forth above, American Casual cannot state a claim for breach of contract based on these allegations.") (citing *Adkins v. Cagle Foods JV, LLC*, 411 F.3d 1320, 1327 (11th Cir. 2005)).

Georgia law further provides that, "[i]t is clear that a security deed which includes a power of sale is a contract and its provisions are controlling as to the rights of the parties thereto and their privies." *Gordon*, 446 S.E.2d at 515; *see also You*,

21

743 S.E.2d at 433 ("Under current Georgia law, the holder of a deed to secure debt is authorized to exercise the power of sale in accordance with the terms of the deed even if it does not also hold the note or otherwise have any beneficial interest in the debt obligation underlying the deed.").

Additionally, "every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *Hunting Aircraft, Inc. v. Peachtree City Airport Auth.*, 636 S.E.2d 139, 140-41 (Ga. Ct. App. 2006) (alteration and quotation omitted); *see also Martin v. Hamilton State Bank*, 723 S.E.2d 726, 727 (Ga. Ct. App. 2012). "This duty, however, does not create an independent cause of action disconnected from the contract from which it arises." *Pace v. CitiMortgage, Inc.*, Civil Action No. 4:12-cv-127 (CDL), 2013 WL 55825, at *4 (M.D. Ga. Jan. 3, 2013). "If no contract provision exists upon which this duty of good faith can be imposed, then no cause of action exists for the failure to act in good faith." *Id.* (citing *Stuart Enters. Int'l, Inc. v. Peykan, Inc.*, 555 S.E.2d 881, 884 (Ga. Ct. App. 2001)).

In the breach of contract claim, Plaintiffs allege that Defendants Bank of America, Wilmington and Rushmore breached the requirements of the promissory note and security deed by "misappl[ying]" the "payments made in May 2012" to the account. *See* Compl. [1] at 15. The Complaint otherwise does not explain what "payments" were made in 2012, or to whom, or any facts to support the conclusion

that those payments were "misapplied."[5] Indeed, Plaintiffs do not even allege any facts to show what Defendants if any they had a contractual relationship with in May 2012.[6] This approach falls well short of the Plaintiffs' obligation to allege facts that show a plausible claim for relief. Count IV, for breach of contract, fails. And because the implied warranty of good faith does not provide a substantive legal basis for a claim separate and apart from an underlying contractual breach, Count V fails too.

### 5.  Other Claims

Plaintiffs assert a claim for unjust enrichment in Count VI. The Complaint asserts no facts in support and otherwise explains no theory suggesting how or why any particular Defendant was unjustly enriched, except insofar as the Complaint alleges that one or more Defendants foreclosed on a property without standing to foreclose. The Court has already rejected these theories. It follows that the unjust

---

[5] As with many *pro se* Complaints filed in this district seeking to avoid foreclosure, this Complaint is a form pleading, identical to other Complaints that have been filed in other cases. *See Gatlin v. Ditech Fin., et al.*, case no. 1:16-cv-0615-MHC-JSA (N.D. Ga.), Compl. [1]. The undersigned has encountered other cases using this form Complaint that include a similar reference to a misapplied payment in May 2012, [*see id.* ¶ 56], which suggests that this allegation may simply have been cut-and-pasted at some point from another pleading.

[6] It would seem from the assignments attached to Defendant Bank of America's motion, that the security deed had already been transferred to Bank of America by May 2012. However, it appears that the transfers to Rushmore and Wilmington occurred years later, presumably refuting any possible liability for a contractual breach back in May 2012.

enrichment claim fails as well. Count VII–for damages and declaratory relief–merely asserts a claim for remedies. There remains no substantive claim for which Defendants face potential liability, either for damages, declaratory relief, or other remedy. Thus, Count VII should be dismissed as well.

## III.   CONCLUSION

The Court **RECOMMENDS** that Defendants' Motions to Dismiss [5][8] be **GRANTED**, and that the Complaint be **DISMISSED WITH PREJUDICE** against all Defendants.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. The Clerk is therefore **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 31st day of August, 2016.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE

24